United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 11, 2005**

Charles R. Fulbruge III
Clerk

I n the

# United States Court of Appeals
## for the Fifth Circuit

_____

m 03-11194

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

BRUCE CARNEIL WEBSTER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas

_____

Before SMITH, WIENER, and BARKSDALE,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Bruce Webster, a federal prisoner under a sentence of death, appeals the denial of his petition for post-conviction relief under 28 U.S.C. § 2255 on two related claims that the district court rejected on the merits but on which it granted a certificate of appealability ("COA"). Concluding that Webster is not entitled to relief, we affirm.

I.

A.

In 1996, a federal jury convicted Webster of three offenses—kidnaping resulting in death, conspiring to kidnap, and using and carrying a firearm during a crime of violence—for his role in the shocking and exceedingly brutal kidnaping, rape, and murder of sixteen-year-old Lisa Rene.[1]    The

_____

[1] The facts are set forth in chilling detail in *United States v. Webster*, 162 F.3d 308, 317-19

(continued...)

government sought a death sentence pursuant to the Federal Death Penalty Act of 1994, 18 U.S.C. §§ 3591-3598, and after a separate sentencing hearing the jury returned special findings that Webster satisfied the requisite elements of intent, *see* § 3591(a), and that three statutory and two non-statutory aggravating factors existed, *see* § 3592.[2] Varying numbers of jurors found nine mitigating factors.[3] By unanimous vote as required, the jury recommended that Webster be sentenced to death.

After imposing a death sentence on the verdict, the district court entered a finding that Webster is not mentally retarded and is therefore not exempt from the death penalty under 18 U.S.C. § 3596(c),[4] which prohibits the imposition of a death sentence on a person who is mentally retarded or, because of a mental disability, lacks the mental capacity to

_____

[1](...continued)
(5th Cir. 1998).

[2] *See id.* at 319 n.1 (identifying aggravating factors unanimously found by the jury).

[3] *See id.* at 319-20 n.2 (identifying statutory and non-statutory mitigating factors presented by Webster and the number of jurors, if any, that found each factor).

[4] The finding provides:

After consideration of all the evidence and information presented in the guilt and punishment phases of trial, the Court hereby issues its factual finding that the defendant Webster is not mentally retarded and that he possesses the requisite mental capacity to understand the death penalty and why it will be imposed on him. As a result, the defendant Webster is not exempt under 18 U.S.C. § 3596(c) from implementation of the death penalty.

understand the death penalty or why it was imposed.

Webster maintained during the penalty phase that he is mentally retarded and, in support, presented testimony from four medical experts regarding his mental capacity and the testimony of a fifth medical expert on surrebuttal to critique the methodology used by one of the government's experts in testing his cognitive abilities.[5] Webster presented voluminous evidence of the abuse he suffered as a child, including testimony from his mother, two of his brothers, two of his sisters, an aunt, a niece, and an ex-girlfriend. All these witnesses testified about the severe physical and sexual abuse Webster's father inflicted on his children and his wife (Webster's mother).

The government vigorously disputed Webster's claim of mental retardation. Beyond cross-examining defense experts, the government produced two medical experts who testified that they did not believe Webster was retarded and, moreover, that the methodology used by defense experts to gauge his mental capacity was critically flawed and misleading. The government presented numerous other witnesses, including correctional and probation officers, former teachers, and fellow inmates, whose testimony contradicted Webster's claim of retardation.

_____

[5] *See Webster*, 392 F.3d 787, 793-94 & n.10 (5th Cir. 2004) (summarizing Webster's expert testimony and denying a COA, as discussed *infra*); *Webster v. United States*, No. 4:00-CV-1646-Y, 2003 WL 23109787, at *6-7, 12-14 (N.D. Tex. Sept. 30, 2003) (reviewing defense expert testimony on mental retardation).

B.

We affirmed the conviction and sentence on direct appeal, *see United States v. Webster*, 162 F.3d 308 (5th Cir. 1998), *cert. denied*, 528 U.S. 829 (1999). Among the more than twenty claims Webster raised on direct appeal, we rejected his claim that the district court's finding that he is not mentally retarded, to which no objection was made at trial, was against the greater weight and credibility of the evidence. *See id.* at 352-53. Reviewing for clear error, we determined that "[t]he government presented substantial evidence to support the finding," *id.* at 353, and accordingly we rejected the claim.

Webster thereafter filed, in 2000, a motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255, and an amended § 2255 motion challenging his conviction and sentence on sixteen grounds in 2002. The district court rejected Webster's claims and dismissed his motion, *see Webster v. United States*, No. 4:00-CV-1646-Y, 2003 WL 23109787 (N.D. Tex. Sept. 30, 2003).

Webster applied for a COA on each of the sixteen grounds raised in his amended § 2255 motion.[6] The district court granted a COA limited to two of the sixteen claims: first, that the evidence presented at trial was insufficient to warrant the district court's finding that Webster is not mentally retarded; and second, that his alleged retardation renders him ineligible for a death sentence.

Webster then applied to this court for a

COA on the fourteen issues deemed unworthy of collateral appellate review by the district court; we denied a COA on each of the additional claims, *see United States v. Webster*, 392 F.3d 787 (5th Cir. 2004). We now address, on the merits, Webster's appeal on the two issues rejected on the merits but on which the district court granted a COA.

II.

A.

Webster contends that the evidence presented at trial was insufficient to warrant the district court's finding that he is not mentally retarded. The government argued to the district court that this claim is procedurally barred because it was raised and rejected on direct appeal,[7] but the district court appears to have concluded that, though on direct appeal we rejected Webster's claim that the finding was against the greater weight and credibility of the evidence, the intervening decision in *Atkins v. Virginia*, 536 U.S. 304 (2002) (holding that the Eighth Amendment prohibits execution of the mentally retarded) saves this claim from a procedural bar. *See Webster*, 2003 WL 23109787, at *5.

Yet, even before *Atkins*, at the time of Webster's trial, 18 U.S.C. § 3596(c) prohibited the execution of mentally retarded offenders in federal prosecutions. The only substantive change (as explained further *infra*) ushered in by *Atkins* with respect to federal capital defendants, then, is the recognition of a new source of federal law (*i.e.*, constitutional) that

---

[6] *See* 28 U.S.C. § 2253(C)(1)(B) ("Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a proceeding under section 2255.").

[7] *See United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) ("It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 motions."); *United States v. Rochas*, 109 F.3d 225, 229-30 (5th Cir. 1997).

bars their execution. In any event, we assume for present purposes that *Atkins* permits, whether by way of clarification of the meaning of mental retardation or some other reason, Webster to restate his sufficiency challenge, so we proceed to address the merits, but we do so without deciding that we must.

### B.

In advancing his collateral challenge to the sufficiency of the evidence, Webster invokes *Jackson v. Virginia*, 443 U.S. 307 (1979), which held that a state defendant is entitled to federal habeas corpus relief if the state's evidence was such that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Webster argues that *Jackson* provides the standard against which the evidence supporting the finding that he is not mentally retarded should be measured—the necessary implication being that the government had the burden of proving beyond a reasonable doubt that Webster is *not* mentally retarded.

But the *Jackson* standard is inapposite here, where the challenged finding is the *absence* of mental retardation, and not a substantive element of the offense to which *Jackson* applies by its own terms,[8] or an aggravating circumstance, sentencing factor, or special issue in the context of capital proceedings, to which *Jackson* has since been applied.[9]

Moreover, nothing in the Federal Death Penalty Act requires the government to prove—by any standard, much less beyond a reasonable doubt—that a capital defendant is not mentally retarded. Nor does anything in *Atkins* require, as a constitutional matter, the government to prove—again, by any standard, much less beyond a reasonable doubt—that a capital defendant is not mentally retarded. Instead, the Court in *Atkins* decided to "leave to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences." *Atkins*, 536 U.S. at 317 (quoting *Ford v. Wainwright*, 477 U.S. 399, 416-17 (1986) (alterations in original)). And several states have since placed the burden on capital defendants to prove by a preponderance of the evidence that they are mentally retarded.[10]

In fact, even before the district court looked askance at Webster's suggestion on

---

[8] *See Jackson*, 443 U.S. at 319 ("[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found *the essential elements of the crime* beyond a reasonable doubt.") (second emphasis added).

[9] *See, e.g., Lewis v. Jeffers*, 497 U.S. 764, 781 (1990) (holding that in reviewing whether a state (continued...)

[9](...continued) court's finding of an aggravating factor is so erroneous as to constitute an Eighth Amendment or due process violation, a federal court considering a habeas corpus petition should apply the "rational factfinder" test established in *Jackson*); *Martinez v. Johnson*, 255 F.3d 229, 244-45 (5th Cir. 2001) (applying *Jackson* to sufficiency challenge to future dangerousness finding); *Fierro v. Lynaugh*, 879 F.2d 1276, 1280 (5th Cir. 1989) (same); *Green v. Johnson*, 160 F.3d 1029, 1046-47 (5th Cir. 1998) (applying *Jackson* to a challenge to the sufficiency of a finding of deliberateness); *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993) (same).

[10] *See, e.g., Ex Parte Briseno*, 135 S.W. 3d 1, 12 (Tex. Crim. App. 2004); *Russell v. State*, 849 So. 2d 95, 148 (Miss. 2003); *State v. Williams*, 831 So. 2d 835, 860-61 (La. 2002); *Murphy v. State*, 54 P.3d 556, 568 (Okla. Crim. App. 2002).

collateral review that the government had to prove his non-retardation beyond a reasonable doubt, we had already rejected the claim, albeit in the context of a state prisoner on federal habeas review, that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Ring v. Arizona*, 536 U.S. 584 (2002), when read together with *Atkins*, require the government to prove beyond a reasonable doubt that a capital defendant is not mentally retarded. In *In re Johnson*, 334 F.3d 403, 405 (5th Cir. 2003), we squarely held that "neither *Apprendi* and *Ring* nor *Atkins* renders the absence of mental retardation the functional equivalent of an element of capital murder which the state must prove beyond a reasonable doubt."[11]

Indeed, it was on this basis that we denied Webster a COA on his claim that *Apprendi* and *Ring* alone require the government to prove his non-retardation beyond a reasonable doubt. *See Webster*, 392 F.3d at 791-92.[12]

_____

[11] *See also Ring*, 536 U.S. at 609 (noting that jury finding beyond a reasonable doubt is constitutionally required for aggravating factors that operate as "the functional equivalent of an element of a greater offense"); *Walker v. True*, 399 F.3d 315, 326 (4th Cir. 2005) (rejecting claim that *Ring* requires a jury determination of mental retardation, and reasoning that "an increase in a defendant's sentence is not predicated on the outcome of the mental retardation determination; only a decrease") (internal marks omitted); *Johnson*, 334 F. 3d at 405 ("[T]he absence of mental retardation is not an element of the sentence any more than sanity is an element of an offense."); *cf. Medina v. California*, 505 U.S. 437, 449 (1992) (holding that a state may presume a defendant to be competent and require him to carry the burden of proving his incompetence by a preponderance of the evidence).

[12] Even if the rules announced in *Apprendi* and (continued...)

Accordingly, we reject Webster's claim to the extent it is based on an alleged constitutional error in the allocation of the burden of persuasion and standard of proof.

C.

In any event, the district court proceeded dutifully to re-examine the extensive record evidence bearing on Webster's mental capacity and concluded, once again, that a "rational fact-finder could have found that Webster is not mentally retarded based on the evidence presented at trial." *Webster*, 2003 WL 23109787, at *11. Once again, we cannot say the district court erred in reaching this conclusion and rejecting Webster's renewed sufficiency challenge. *See Webster*, 192 F.3d at 352-53.

To be sure, as the district court noted, "all of the experts who testified at Webster's trial, including those who testified for the government, acknowledged that Webster has a low I.Q." *Id.* at *14.[13] But, under the definition of

_____

[12](...continued)
*Ring* were applicable to the absence of mental retardation, the bar of non-retroactivity would preclude their application to cases already final on direct review. *See Webster*, 392 F.3d at 792; *see also Schriro v. Summerlin*, 542 U.S. 348, ___, 124 S. Ct. 2519, 2526 (2004) (holding that the procedural rule announced in *Ring* is not retroactive to cases already final on direct review); *United States v. Brown*, 305 F.3d 304, 310 (5th Cir. 2002) (holding that the procedural rule announced in *Apprendi* is not retroactively applicable to initial postconviction petitions under § 2255).

[13] There was a dispute as to how low, and both government experts, Dr. George Parker and Dr. Richard Coons, testified that, in their opinion, Webster had an incentive not to perform well on (continued...)

mental retardation cited in *Atkins*, *see* 536 U.S. at 308 n.3, a showing of borderline or below average intelligence does not alone constitute an adequate showing of retardation. Rather, an adequate showing of mental retardation also requires significant deficits in adaptive skills,[14] and it is here, as the district court concluded, that the government effectively countered Webster's claimed retardation:

> [T]he issue of adaptive skills or the lack thereof is where the parties converged at Webster's trial. While the defense did place into evidence the results of the Vineland test, government witnesses effectively reputed some of those findings with direct evidence that Webster has adapted to his

environment and does possess skills that his family stated he did not. Looking at all the evidence presented by both sides at trial, while it is undisputed that Webster has had low I.Q. scores on almost every I.Q. test that has been administered to him, these scores are, according to even defense witness Dr. Keyes, attributable to "nonorganic" factors, which this Court understands to mean his lack of quality formal education and any positive or productive home life. Nevertheless, the evidence presented at trial does reflect that Webster has adapted to the criminal life that he chose and has illustrated the ability to communicate with others, care for himself, have social interaction with others, live within the confines of the "home" he has been in since he was sixteen, use community resources within this home, read, write, and perform some rudimentary math. This evidence therefore supports a finding that Webster does not have a deficit in adaptive skills.

*Webster*, 2003 WL 23109787, at *14 .[15]

---

[13](...continued)
cognitive tests administered after he was charged in this case; they pointed to earlier tests taken by Webster on which he scored higher. Parker also testified that lifestyle choices and cultural factors can account for low I.Q. scores (a point defense experts Dr. Keyes and Dr. Finn acknowledged), thus casting doubt on the reliability of the I.Q. tests administered by Keyes, which required Webster to define words (he was unable to define "inflation") and recognize faces (he could not identify Shakespeare, Mark Twain, or Albert Einstein from pictures) to which he was unlikely to have been previously exposed.

[14] Mental retardation has as its essential feature significantly subaverage general intellectual functioning accompanied by significant limitations in adaptive functioning, with onset before the age of eighteen. *Morris v. Dretke*, 413 F.3d 484, ___, 2005 U.S. App. LEXIS 11430, at *4 (5th Cir. June 16, 2005) (quoting AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 41 (text rev. 4th ed. 2000)).

---

[15] In fact, not only were government experts able to refute many of the specific findings obtained from the "Vineland test" administered by Keyes, *see Webster*, 2003 WL 23109787, at *13, but they testified that the test was an inappropriate and deceptive measure of Webster's adaptive skills, given his lifestyle as a drug dealer. Moreover, government experts noted that Webster had shown cleverness and adaptability when he sneaked into the women's portion of the jail in which he was held, concocted cover stories and made excuses to police when he was arrested with a key in his pocket to the motel room in which Lisa Rene was held and raped repeatedly, and burned his clothes to destroy evidence after her murder.

The government also presented the testimony of
(continued...)

## III.

Webster claims he is mentally retarded and thus ineligible for his death sentence, but given our rejection of his claim regarding the standard of proof and sufficiency of the evidence supporting the contrary finding at trial, this claim is reduced, in essence, to nothing more than an attempt to re-litigate the question. Indeed, Webster's brief does not point to any new evidence bearing directly on his mental capacity; instead, it summarizes the evidence presented at trial concerning his cognitive abilities and childhood experiences.[16]

Webster cannot, however, continue to litigate this claim hoping that some court eventually will agree with him. The question whether he is mentally retarded was, as the district court observed, "a highly contested one at trial," *Webster*, 2003 WL 23109787, at \*12, and Webster failed to convince *either* the district court that he is retarded or, moreover, a majority of the jurors that he is or even *may be* retarded. And the record supports those findings.

The judgment denying Webster's petition for post-conviction relief is AFFIRMED.

---

[15](...continued)

numerous other witnesses, including correctional officers and fellow inmates that, while incarcerated, Webster engaged in various activities potentially inconsistent with a finding of retardation. For example, he wrote letters to fellow inmates; received letters and newspapers; read aloud from newspapers; wrote request slips for various services; prepared written grievances; submitted names and addresses of people for his visitation list; and on one occasion complained because the change he received from the prison commissary was incorrect.

[16] Webster's brief does refer to evidence marshaled in the district court on collateral review concerning racial discrimination in the district where Webster attended school, which Webster continues to assert would have, if presented at trial, demonstrated why he was not enrolled in special education courses and therefore would have effectively countered the government's assertion that he is not mentally retarded. But we previously denied Webster a COA on an ineffective assistance of counsel claim premised on the failure of defense counsel to investigate and present such evidence and on a a vague yet related claim under *Brady v. Maryland*, 373 U.S. 83 (1963), *see Webster*, 392 F.3d at 795, 797-99.

(continued...)

---

[16](...continued)

Our analysis of those claims obtains equally here: "In the main, the prosecution presented substantial evidence countering Webster's claim of mental retardation, and the government's effort did not depend in any significant respect on Webster's non-enrollment in special education courses." *Id.* at 798-99. Thus, we held that even if Webster could otherwise sustain his claims, "the incremental impeachment value, if any, of such evidence does not raise a possibility that, had the evidence been presented, the outcome would have been different." *Id.* at 795; *see also id.* at 799.